IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**EIKO T. JONES**                                                        **MOVANT**

v.                                               **No. 1:19CR96-MPM-DAS**

**UNITED STATES OF AMERICA**                                  **RESPONDENT**

**MEMORANDUM OPINION**

This matter comes before the court on the motion of Eiko T. Jones to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The government has responded to the motion; Jones has replied, and the matter is ripe for resolution. For the reasons set forth below, the instant motion to vacate, set aside, or correct sentence will be denied.

### *Habeas Corpus* Relief Under 28 U.S.C. § 2255

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section 14 of the Judiciary Act of 1789. *Habeas corpus* principles developed over time in both English and American common law have since been codified:

The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the

1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id.*

### Section 2255 Proceedings

Section 28 U.S.C. § 2255 permits an inmate serving a sentence after conviction of a federal crime "to move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). As with the writ of *habeas corpus*, *see* 28 U.S.C. §§ 2241, 2254, a § 2255 motion sets forth only four bases on which a motion may be made: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Thus, a prisoner must claim either a constitutional violation or want of subject matter jurisdiction to invoke 28 U.S.C. § 2255. In the absence of constitutional or jurisdictional defects, a federal prisoner may invoke § 2255 only if the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185 (1979).

The district court must first conduct a preliminary review of a section 2255 motion, and "[i]f it plainly appears from the motion, any attached exhibits, and the record of the prior proceeding that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing Section 2255 Proceedings, Rule 4(b). If the motion raises a non-frivolous claim to relief, the court must order the Government to file a response or to take other appropriate action. *Id.* The judge may then require

the parties to expand the record as necessary and, if good cause is shown, authorize limited discovery. *Rules Governing Section 2255 Proceedings,* Rules 6–7.

After reviewing the government's answer, any transcripts and records of prior proceedings, and any supplementary materials submitted by the parties, the court must decide whether an evidentiary hearing is warranted. *Rules Governing Section 2255 Proceedings,* Rule 8. Under the statute, an evidentiary hearing must be held unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). However, the court need not hold an evidentiary hearing if the prisoner fails to produce "independent indicia of the likely merit of [his] allegations." *United States v. Edwards,* 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998)).

Ultimately, the petitioner bears the burden of establishing his claims of error by a preponderance of the evidence. *See Wright v. United States,* 624 F.2d 557, 558 (5th Cir. 1980). For certain "structural" errors, relief follows automatically once the error is proved. *See Burgess v. Dretke,* 350 F.3d 461, 472 (5th Cir. 2003). For other errors at the trial court level, the court may grant relief only if the error "had substantial and injurious effect or influence" in determining the outcome of the case. *Brecht v. Abrahmson,* 507 U.S. 619, 637 (1993); *see also United States v. Chavez,* 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht's* harmless error standard in a § 2255 proceeding). If the court finds that the prisoner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

**Facts and Procedural Posture**[1,2]

A federal grand jury returned a multi-count indictment on July 24, 2019, charging the defendant, Eiko Jones, with violations of federal drug trafficking laws. (PSR ¶ 1). On September 12, 2019, Jones was charged with the same counts in a Superseding Indictment. ( PSR ¶ 2). Count One charged conspiracy to possess with intent to distribute methamphetamine and marijuana in violation of Title 21, U.S.C. §§ 841(a)(1), (b)(1)(A) and 846, which carried maximum possible penalties of not less than 10 years and not more than life imprisonment. (PSR ¶ 2-3). Count Two charged Jones with aiding and abetting to possess with intent to distribute methamphetamine in violation of Title 18, U.S.C. § 2 and Title 21, U.S.C. §§ 841(a)(1), (b)(1)(B) which carried maximum possible penalties of not less than 5 years and not more than 40 years imprisonment. (PSR ¶ 4).

Jones was a member of the Jeremy Mairidith drug trafficking organization (DTO). The DTO acquired, sold, and distributed methamphetamine and marijuana purchased from sources of supply in Georgia and California. (PSR ¶ 12). The DTO primarily operated in Lee County, Mississippi where it sold most of its methamphetamine and marijuana. (PSR ¶ 13). In April 2019, Jones arrived in the Northern District of Mississippi from the Chicago area for the purpose of selling and distributing marijuana to the Mairidith DTO. (PSR ¶ 14). In May 2019, Jones and Mairidith flew from Memphis, Tennessee, to California to meet a source of supply for methamphetamine. While in California, Jones and Mairidith negotiated the details of a shipment of two kilograms of methamphetamine. Jones and Mairidith arranged for two kilograms of

---

[1] The court has drawn the facts and procedural posture from the Government's motion to dismiss, as the material facts are both uncontested and well-documented.

[2] The record contains the facts necessary to decide the instant motion to vacate, set aside, or correct sentence; as such, an evidentiary hearing is not necessary.

methamphetamine to be sent by mail from California to the Tupelo, Mississippi area. (PSR ¶ 16-17). Jones, Mairidith and a third coconspirator returned to Tupelo from California and awaited the arrival of methamphetamine. During this time, Jones used a local address (5355 S. Raymond Avenue, Verona, Mississippi) to count money and conduct other drug trafficking business. (PSR ¶ 18-19).

On May 18, 2019, agents intercepted the 2KG package of methamphetamine destined for Jones and his coconspirators at a mail facility in Tupelo. Most of the methamphetamine was seized, and a controlled delivery of a small amount was conducted by law enforcement. (PSR ¶ 21). Jones and his coconspirators arrived at the stash house and took possession of the package containing methamphetamine and led law enforcement officers on a high-speed chase until they were eventually apprehended. *Id*.

Shortly after Jones and his coconspirators were arrested in possession of methamphetamine, several search warrants were executed. Specifically, 5355 S. Raymond Avenue, Verona (the residence Jones frequented and parked his semi, where he slept) was searched. As a result of the search, agents found drug paraphernalia, as well as a loaded .380 pistol, a Taurus 9mm pistol, a 12- gauge shotgun, and Jones' black bag containing several boxes of King Louie Dank Vapes. (PSR ¶ 20). Jones' semi-truck was parked on the property, and the occupants of the property told law enforcement officers Jones had been sleeping in the truck on the property. *Id*.

On August 20, 2019, Jones was appointed William F. Travis as his counsel. (Doc. 100). On October 21, 2019, Mr. Travis filed a motion to withdraw his representation of Jones citing a bar complaint filed by Jones. (Doc. 143). The court granted the motion and substituted Robert W. Davis, Jr. as counsel. (Doc. 149). A Motion for a Protective Order for the Disclosure of

Discovery and 3500 Materials was filed by the government on October 24, 2019, and granted by the court a few days later. (Docs. 150, 154). On January 10, 2010, the Court signed an Order Clarifying and Appointing a Coordinating Discovery Attorney for Jones and his codefendants. (Docs. 165, 167). On May 1, 2020, Mr. Davis filed a Motion to Withdraw as Attorney citing Jones' request that he move for leave to withdraw from representation. (Doc. 222). This motion was denied. (Doc. 229). Jones then filed a *Pro Se* Motion to Appoint Counsel. This motion was also denied. (Docs. 230-31). On May 26, 2020, Phillip C. Hearn filed a notice of appearance and remained as counsel for Jones throughout the remainder of the criminal case. (Doc. 232). As a result of Mr. Hearn's appearance, Mr. Davis was allowed to withdraw from the case. (Doc. 234).

On November 16, 2021, pursuant to a plea agreement and plea supplement, Jones pled guilty to the lesser included offense of Count One of the Superseding Indictment, conspiracy to possess with intent to distribute methamphetamine and marijuana, in violation of Title 21, U.S.C. § 841 (a)(1), (b)(1)(C), carrying no mandatory minimum and with a statutory maximum term of imprisonment of twenty years – a significant statutory reduction from the crime for which Jones was indicted. (PSR ¶ 6). At the change of plea hearing, the court advised Jones of his many rights, including whether he had fully discussed his case with his attorney, and whether he was fully satisfied with counsel's representation and advice. (Plea Tr. 5).

When the court asked whether he had been threatened or forced into pleading guilty, or whether anyone made any promises other than the plea agreement to cause Jones to plead guilty, Jones answered in the negative. (Plea Tr. 5-6). The government then presented: (1) the elements of the lesser included offense that must be proved; (2) the maximum possible penalties; (3) the substance of the plea agreement and the inclusion of a plea supplement; and (4) the factual basis

of proof. Jones stated to the court he understood, agreed, and was voluntarily pleading guilty. (Plea Tr. 7-16).

Following Jones' guilty plea, the United States Probation Service prepared its Pre-Sentence Investigation Report (PSR). The PSR contained the following language, "[i]n the event a motion for downward departure pursuant to §5K1.1 is filed and granted, the defendant agrees to waive his right to appeal any and all issues in this case, except to claims relating to prosecutorial misconduct and ineffective assistance of counsel." (PSR ¶ 9). The PSR held Jones responsible for 1974 grams of methamphetamine (actual) and 9.07 KG of marijuana which, pursuant to USSG § 2D1.1, resulted in a base offense level of 36. (PSR ¶ 30). Jones received a +2 increase under USSG § 2D1.1(b)(1) for possession of firearms found during the search of the premises he was known to frequent and conduct illegal drug business. (PSR ¶ 20). Jones received a three-point reduction for acceptance of responsibility which resulted in a total offense level of 35. (PSR ¶ 37-39). Jones' criminal convictions resulted in a criminal history score of seven and established a criminal history category of IV. (PSR ¶ 51-52). The PSR calculated Jones' guideline imprisonment range to be 235-293 months. However, because Jones entered a plea to the lesser included offense that carried a statutory maximum of 240 months, the guideline range became 235-240 months. (PSR ¶ 77).

On April 7, 2022, the court held a sentencing hearing. The government had no objections to the PSR. Initially, Jones filed an objection to the PSR. (Doc. 506). However, at the beginning of the sentencing hearing, Jones withdrew his objection. (Sent. Tr. 3). Jones addressed the court – and apologized to the court and his family for his criminal actions and asked for leniency. *Id*. The court acknowledged that the government filed a motion for downward departure. (Doc. 492, Sent. Tr. 6). The court adopted the PSR without change and imposed a sentence substantially

below the recommended guideline range based upon the motion filed by the government. (Sent. Tr. 7). The court examined the 18 U.S.C. § 3553(a) factors and briefly discussed them. (Sent. Tr. 7-9). Jones received a sentence of 120 months imprisonment, about 50% below his recommended guideline range. On May 5, 2022, Mr. Hearn filed a Motion to Withdraw as Attorney and a Motion for Extension of Time to File Appeal. (Docs# 528-29). Both motions were granted. (Docs. 531-32).

On June 24, 2022, Jones filed the instant Motion to Vacate Under 28 U.S.C. § 2255 alleging the following grounds for relief:

**Ground 1:** Counsel provided ineffective assistance by failing to challenge the two-point sentencing enhancement for possession of a dangerous weapon.

**Ground 2:** Counsel provided ineffective assistance by failing to argue for a minor role reduction.

**Ground 3:** Counsel provided ineffective assistance by failing to investigate his defense.

**Ground 4:** Counsel provided ineffective assistance by not providing him with discovery.

**Ground 5:** Counsel was ineffective because he failed to file a notice of appeal when requested.

## Ineffective Assistance of Counsel

Jones alleges that counsel provided ineffective assistance in his defense in five ways. The court must address claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove that defense counsel was ineffective, the petitioner must show that counsel's performance was deficient and that the deficiency resulted in prejudice to her defense. Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that he was not functioning as the "counsel"

- 8 -

guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).

To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997). "When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011); *Premo v. Moore*, 131 S.Ct. 733 (2011). As set forth below, Mr. Jones has not met this standard; he has proved neither deficient performance nor prejudice as to any of his five grounds for relief.

**Initial Matter: Waiver of Direct Appeal and Collateral Review**

As to the first four grounds for relief, in his plea agreement, Jones waived his right to appeal and to seek post-conviction collateral relief. As part of his negotiated plea agreement and supplement, if the government filed a motion under § 5K1.1 – and it was granted – Jones agreed to waive his right to appeal as to any and all issues in the case, and to collaterally attack his sentence, except to claims relating to prosecutorial misconduct and ineffective assistance of counsel. (PSR ¶ 9, See Plea supplement filed under seal). The court granted the government's § 5K1.1 motions; as a result, Jones received the benefit of the downward departure, with a sentence reduction of nearly 50%.

In the Fifth Circuit, "an informed and voluntary waiver of post-conviction relief is effective to

bar such relief."[3] *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (per curiam). However, an exception to that rule is that an ineffective assistance claim survives a § 2255 waiver – when the claimed ineffective assistance directly affected the validity of that waiver or the plea itself. *United States v. Hollins*, 97 F., App'x 477, 479, 2004 WL 963250. None of the ineffective assistance claims in Grounds One through Four challenge the validity of the waiver or guilty plea; as such, they are subject to the waiver in the plea agreement and must be dismissed for that reason. As discussed below, Grounds One through Four are also without substantive merit.

### Ground One: Failing to Challenge the 2-Point Enhancement for Possession of a Dangerous Weapon

Jones alleges that counsel provided ineffective assistance by declining to challenge the two-point sentence enhancement for possession of a dangerous weapon under United States Sentencing Guideline 2D1.1(b)(2). Before a sentencing court can apply § 2D1.1(b)(2), the government must prove weapon possession by a preponderance of the evidence. *United States v. Zapata-Lara*, 615 F.3d 388, 390 (5th Cir. 2010). In this case, the government can do so by showing a temporal and spatial relationship as to the weapon, the drug trafficking activity, and the defendant. *Id.* To make that showing, the government must provide evidence that the weapon was found in the same location where drugs or drug paraphernalia are stored or where part of the transaction occurred. *Id.*

Jones states that he did not reside at the S. Raymond Ave. home and that none of the firearms were found in his black bag. Doc. 568, p. 1-2. In addition, he states that some of the firearms (the loaded Taurus handgun, its ammunition, and a 12-gauge shotgun) were found in the kitchen,

---

[3] Jones testified that he understood his waiver of appeal; as such, the waiver was made knowingly and voluntarily. *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005)

"accessible to anyone in the residence," though Jones denies that he knew their location. *Id.* at 1. For this reason, he argues that he did not "possess" a dangerous weapon under United States Sentencing Guideline § 2D1.1(b)(2). He misapprehends how to determine when a defendant "possesses" a weapon under § 2D1.1(b)(2). The record in this case reveals that the government had sufficient evidence that Jones possessed dangerous weapons; he received a +2 increase in his base offense level for possession of firearms found during a search of the premises at which he spent time and conducted illicit drug trade. PSR ¶ 18-20.

First, On May 15 and May 16, 2019, surveillance showed Jones using the residence at 5355 S. Raymond Avenue, Verona, Mississippi, to conduct business regarding the operations of the drug trafficking operation. (PSR ¶ 18-20). Investigators recovered the weapons while executing a search warrant on May 18, 2019, at the S. Raymond Ave. residence. Investigators also collected drug paraphernalia – and a handgun, ammunition, and a shotgun that were "accessible to anyone" there. PSR ¶ 20, Doc. 568, p. 1. Indeed, the Raymond Avenue address was the conspiracy's base of operations, and Jones' personal property (the black bag and its contents) was also found there. (PSR ¶ 18-20). He also frequently slept in his semi truck outside the home, and the semi was parked there at the time of the search. (PSR ¶ 20). Jones did not object to these facts during sentencing. (Sent. Tr. 3).

These facts establish a spatial and temporal relationship between Jones, the weapons, and activity advancing the drug trafficking conspiracy – thus showing that he possessed a dangerous weapon. Put simply, Jones was in the house serving as the conspiracy's base of operations on May 15 and 16 – at the same time as the weapons and ammunition. He had been there before, acting in furtherance of the conspiracy. Jones did not object to this information in the PSR – and agreed with it during sentencing. For these reasons, counsel had no valid basis to challenge the enhancement for possession of a dangerous weapon under USSG 4D1.1(b)(2), and Jones has only his bald assertion to

the contrary. "[A] court cannot consider a *habeas* petitioner's bald assertions on a critical issue in his *pro se* petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983). This ground for relief is without substantive merit.

### Ground Two: Failing to Argue for a Minor Role Reduction

This allegation is also contradicted by the record, as Jones was instrumental in the drug trafficking operation; by his own admissions, he knowingly provided the financing to conduct the purchase of 2 KG of methamphetamine from coconspirators in California.[4] (PSR ¶ 16, Plea Tr. 14). He flew with his coconspirators to California and met with the source of supply and negotiated the price and shipment of a 2KG of methamphetamine and discussed details of future purchases. *Id*. He accompanied his coconspirators to the stash house to take possession of the methamphetamine shipped from California. (PSR ¶ 21). Jones admitted under oath that "he knowingly conspired with others to possess with intent to distribute methamphetamine and marijuana…" and that was a member of the Mairidith DTO and "knew of the unlawful purpose of the conspiracy and willfully joined the DTO with the intent to further its unlawful purpose." (Plea Tr. 13). Other than Jones' relatively late appearance in the conspiracy, there is simply no evidence in the record to support the claim that Jones was a minor participant. His late appearance does not alter the fact that he was involved in multiple parts of the conspiracy, from flying across the country to meet with a potential seller, to financing drug transactions, to counting money. Nonetheless, counsel successfully argued for and obtained a lower sentence, based in part on the fact that Jones was a "ninth-inning participant." Doc. 564-2 at 5

---

[4] After his sentencing hearing had concluded, Jones stated, "I didn't know he was going to buy no meth, Your Honor. I did not know that." Sent. Tr. 11. As discussed below, this bare allegation is contradicted by evidence throughout the record.

(Sentencing transcript). Counsel made the arguments he could based upon the facts available regarding Jones' role in the conspiracy.

Without rebuttal evidence, the sentencing court may rely on the PSR and adopt it. *United States v. Ollison*, 555 F.3d 152, 164 (5th Cir. 2009). "The defendant bears the burden of showing that the information in the PSR relied on by the district court is materially untrue." *United States v. Valencia*, 44 F.3d 269, 274 (5th Cir. 1995) (citation omitted). "Mere objections do not suffice as competent rebuttal evidence." *United States v. Parker*, 133 F.3d 322, 329 (5th Cir. 1998) (citation omitted). The PSR conclusively establishes Jones' substantial and active participation in the drug trafficking conspiracy. Again, Jones' bald assertions are insufficient to support his allegation that he played a minor role, and this ground for relief is likewise without substantive merit.

### Ground Three: Failing to Investigate Jones' Defense

In Ground Three Jones alleges that counsel failed to investigate Jones' defense. This allegation is overwhelmingly contradicted in the record – in Jones' sworn statements at his change of plea and sentencing, as well as the sworn statements of his counsel – and the court's observation during the course of the proceedings. For example, Jones claims, with no supporting evidence, that he "had no knowledge that his codefendant planned to use money to purchase drugs." (Jones' Motion p. 2). This statement is completely contrary to his sworn testimony at his change of plea hearing, where he acknowledged, under oath, that:

> [w]hile in California, Gonzalez introduced Mairidith and Jones to Gonzalez' source of supply of methamphetamine, a person known as "Primaso." Mairidith and Jones combined their money to purchase a shipment of 2 kilograms of methamphetamine from Gonzalez and Primaso in California to Mairidith and Jones in the Northern District of Mississippi.

Plea Tr. 14.[5] In addition, counsel interviewed the two witnesses (Jones' mother and wife), and neither possessed "personal knowledge of anything" related to Jones' criminal charges. (Hearn Aff. p. 3). Their sworn statements attached to Jones' Reply [568] in support of the § 2255 motion. Mr. Hearn also accompanied Jones to a meeting on September 30, 2020, at the United States Attorney's Office. At this meeting Jones and his counsel were presented with "the case against Mr. Jones in painstaking detail over several hours. Both Mr. Jones and I were given opportunities to speak and to ask questions." *Id*. All evidence in the record shows that counsel thoroughly investigated Jones' defense, used that knowledge to negotiate with the government – and obtained a plea agreement for a lesser included offense (with less exposure and no mandatory minimum). This allegation is also without substantive merit.

**Ground Four: Counsel Failed to Provide Jones with Discovery**

Again, this claim for relief is flatly contradicted in the trial record and counsel's affidavit. Jones advised the court under oath at his change of plea hearing that he was satisfied with his counsel and had fully discussed the case with him. (Plea Tr. 5). Jones filed no objection to the PSR. (Sent. Tr. 3). Jones also incorrectly claims his counsel failed to provide him with discovery materials. As evidenced by Mr. Hearn's affidavit, the government provided all of the voluminous discovery materials to the defense. Further, the government held at least one lengthy meeting with Jones – and counsel received "over 9,000 pages of written discovery and thousands and thousands of hours of

---

[5] After the conclusion of his sentencing hearing, Jones stated, "I didn't know he was going to buy no meth, Your Honor. I did not know that." Sent. Tr. 11. This statement is directly contradicted by the PSR (¶¶ 16-19) and his testimony at the change plea hearing (Plea Tr. 13-14), which establish that Jones was involved in nearly every step of the transactions, from traveling to meet suppliers, negotiating prices for drugs, and counting money. Jones' conclusory statement cannot support his claim that counsel did not investigate his defense, as he faces the maxim, "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

video and audio recordings..." (Hearn Aff. p. 3). Mr. Hearn hand delivered a summarized version of the discovery to Jones at the Lafayette County Jail on October 21, 2021. *Id*. In addition, the court had issued a Protective Order for the Disclosure of Discovery on October 24, 2019, which necessarily limited the manner in which counsel could share discovery with Jones.[6] Again, the record contradicts Jones' bare allegations, and his claim in Ground Four must be dismissed for want of substantive merit.

### Ground Five: Counsel Failed to File a Notice of Appeal When Directed

Jones alleges that he and his family informed counsel that Jones wished to appeal his sentence. (Jones' § 2255 Motion p. 2). Counsel acknowledged that Jones, his wife, and his mother contacted him after sentencing and informed him that Jones wanted to appeal. (Hearn Aff. p. 5). Counsel told them that Jones had no basis for appeal and that he had waived his right to appeal and collaterally attack his sentence. *Id*. Counsel also told them that he had "no duty to pursue frivolous or groundless defenses or appeals." *Id*. *Counsel then filed a Motion to Withdraw as counsel and a Motion for Enlargement of Time to File Appeal*. (Docs. 528-29). Both motions included a certificate of service to Jones at FCI Gilmer in Glenville, West Virginia.[7] *Id*. The court granted both motions and provided

---

[6] Counsel could not simply enter the jail and hand Jones the vast amount of discovery material. The court's protective order required: (1) all Discoverable Material disclosed in this case, and any copies thereof, shall be kept in the constant care, custody and control of Defense Counsel; (2) any review of Discoverable Material shall take place in Defense Counsel's office or at the detention facility where any defendant is housed; (3) copies of Discoverable Material shall not leave the custody of Defense Counsel or be left at any defendant's detention facility; (4) Discoverable Material, as well as its contents, shall not be discussed with, or disseminated or disclosed to, anyone other than defendants or Defense Counsel, or the staff of Defense Counsel (full time secretaries and attorneys formally associated with the firm), except upon the express authorization of the court.

[7] Though Jones now claims that he was unaware of the 60-day extension, "[t]he rule is well settled that proof that a letter properly directed was placed in a post office, creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." *Duron v. Albertson's LLC*, 560 F.3d 288, 290 (5th Cir. 2009) (citing *Rosenthal v. Walker*, 111 U.S. 185, 193, 4 S. Ct. 382, 386, 28 L. Ed. 395 (1884)). In addition, it is undisputed that Jones contacted other firms to prosecute his appeal, though he ultimately did not do so. As such, it is clear

Jones an additional 60 days to file a Notice of Appeal. (Docs. 531-32). Indeed, several attorneys contacted counsel during that time and told him that Jones and his family had inquired about representing him on appeal. (Hearn Aff. p. 5). Jones relies on *Garza v. Idaho*, 586 U.S. 232, 237, 139 S. Ct. 738, 744, 203 L. Ed. 2d 77 (2019), arguing that Mr. Hearn's decision not to file a notice of appeal constitutes ineffective assistance of counsel, *per se*, and that he is entitled to pursue an out-of-time direct appeal. As discussed below, however, Jones has misinterpreted the Supreme Court's holding in *Garza*, and this claim is without substantive merit.

Failing to file a timely appeal when requested is *not* ineffective assistance of counsel *per se*. *Roe v. Flores-Ortega*, 528 U.S. 470, 478, 120 S. Ct. 1029, 1035, 145 L. Ed. 2d 985 (2000). Certainly, counsel who does not file a timely notice of appeal when directed has fallen below an objective standard of reasonableness – meeting the *deficiency* prong of *Strickland*. *Id*. at 477. However, the failure to file a timely notice of appeal is not *per se prejudicial*, as the court must consider "the critical requirement that counsel's deficient performance *must actually cause the forfeiture of the defendant's appeal*." *Id*. at 484 (emphasis added). This almost always occurs when the defendant instructs counsel to file a notice of appeal, counsel agrees to do so but does not, and the defendant (relying on counsel to timely perfect the appeal) does not become aware of counsel's failure until after the appeal deadline has expired. That is not what happened in the present case. Instead, counsel informed Jones that he would not pursue an appeal, obtained the court's permission to withdraw from the case, then sought and obtained a 60-day extension of the

---

that Jones was aware that he could appeal and explored his options by consulting with other counsel. In any event, even if Jones were unaware of the extension, Mr. Hearn had made clear that he would not pursue an appeal on Jones' behalf, and he could not reasonably rely on Hearn to do so.

appeal deadline. Jones knew very well that counsel was not going to file a notice of appeal and that he should make other arrangements. To say the least, Jones could not reasonably rely on counsel to file the notice of appeal.

Jones had ample opportunity to pursue an appeal, but did not do so. As the Supreme Court held in *Flores-Ortega*,

> [i]f the defendant cannot demonstrate that, but for counsel's deficient performance, he would have appealed, counsel's deficient performance has not deprived him of anything, and he is not entitled to relief. Cf. *Peguero v. United States,* 526 U.S. 23, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999) (defendant not prejudiced by court's failure to advise him of his appeal rights, where he had full knowledge of his right to appeal and chose not to do so). Accordingly, … to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed.

*Id*.

In the instant case, counsel should have filed a notice of appeal when Jones indicated that he wished to appeal, and counsel's failure to do so was deficient performance, meeting the first prong of *Strickland*. *See United States v. Tapp*, 491 F.3d 263, 265 (5th Cir. 2007). However, to meet *Strickland's* second prong, Jones must also show that he suffered *prejudice* from counsel's decision, and, under the facts of this case, he cannot. Jones has not shown that, but for counsel's failure to file a notice of appeal, he would have timely appealed. *Flores-Ortega*, 528 U.S. at 484.

To support this claim, Jones relies on *Garza v. Idaho*, 586 U.S. 232, 237, 139 S. Ct. 738, 744, 203 L. Ed. 2d 77 (2019), arguing that the court must *presume* prejudice every time an attorney does not file a notice of appeal when requested. Doc. 552, p. 2. Jones, however, misapprehends the holding in *Garza*. Instead, the Supreme Court held, "prejudice is presumed 'when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken.'" *Garza v. Idaho*, 586 U.S. at 237 (quoting *Flores-Ortega*, 528 U.S. at 484, 120

S.Ct. 1029). In this case, as discussed above, counsel informed Jones that he would not pursue an appeal on Jones' behalf. Though counsel should have filed the notice of appeal, at that point, Jones knew that he or new counsel must file the notice of appeal, and, indeed, he contacted several attorneys regarding an appeal. After consulting with various counsel, Jones did not file a notice of appeal.

Again, under these facts, counsel's decision against seeking an appeal did not "deprive[] [Jones] of an appeal he otherwise would have taken" – because Jones had the opportunity to file the notice of appeal himself – or to retain counsel to do it for him. Jones "had full knowledge of his right to appeal and chose not to do so;" as such, counsel's decision "has not deprived him of anything, and he is not entitled to relief." *Flores-Ortega*, 528 U.S. at 484.

Mr. Hearn did not simply walk away from the case after sentencing; instead, he informed Jones that he would not file an appeal for him – and why; then counsel *sought and obtained a 60-day extension of the appellate deadline* to give Jones ample opportunity to file a notice of appeal without him. As did the defendant in *Peguero, supra*, Jones knew that he could appeal during the 60-day extension; indeed, he (or his family) contacted several attorneys about doing so. *Peguero*, 526 U.S. 23, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999). He could have pursued an appeal, but did not. Hence, counsel did not deprive Jones of his opportunity to appeal; Jones, himself, did.

As such, "[Jones] cannot demonstrate that, but for counsel's deficient performance, he would have appealed[;] counsel's deficient performance has not deprived him of anything, and he is not entitled to relief." *Flores-Ortega, supra; see also United States v. Tapp*, 491 F.3d at 264 (5th Cir. 2007) (to prevail on a claim that counsel failed to file a notice of appeal, the defendant must show that "there is a reasonable probability that, but for counsel's failure, he would have timely appealed.") Hence,

Jones has not shown that he suffered prejudice from counsel's failure to file a notice of appeal, and this claim is likewise without substantive merit.

**Pending Motions**

Jones has filed a variety of motions which the court will address in turn. He has requested [563], [567] to amend the instant § 2255 motion. Those motions will be granted, and the court has considered the amendments in drafting the instant opinion.

Jones also seeks [565] default judgment because the government filed its response a few days after the deadline to do so. First, "[a] petitioner is not entitled to *habeas corpus* relief as if by default simply because the respondent has not filed its return to the order to show cause within the time specified by the statute." § 41:117. Default judgment in habeas corpus proceeding, 16A Fed. Proc., L. Ed. § 41:117. In addition, default judgment is "generally disfavored in the law" and thus "should not be granted on the claim, without more, that the defendant had failed to meet a procedural time requirement." *Mason & Hanger-Silas Mason Co. v. Metal Trades Council*, 726 F.2d 166, 168 (5th Cir. 1984). The motion [565] for default judgment will be denied.

Jones also seeks [566] to extend the deadline to reply in support of his motion to vacate under 28 U.S.C. § 2255. As he has since filed a reply, which the court has considered, the instant motion [566] will be dismissed as moot.

**Conclusion**

In sum, the instant motion [551] to vacate, set aside, or correct sentence will be denied. Grounds One through Four are barred because the plaintiff waived them as part of his negotiated guilty plea – and are also without substantive merit. Ground Five is without substantive merit. Hence, the instant motion to vacate, set aside, or correct sentence will be denied.

In addition, Jones' motions [563], [567] to amend his petition will be granted; his motion [565] for default judgment will be denied, and his motion [566] to extend the deadline to reply will be dismissed as moot. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 12th day of June, 2024.

/s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI